Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
Jordan C. Wolff (Arizona Bar #034110)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona, 85014
Telephone (480) 999-4556
docket@millsandwoods.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JENIFER ANDERSON, a single woman; L.A., a single woman;<br><br>Plaintiffs,<br><br>vs.<br><br>MESA PUBLIC SCHOOL DISTRICT, et. al.,<br><br>Defendants. | Case No. 2:18-cv-00692-DJH<br><br>**RULE 26(f) JOINT CASE MANAGEMENT REPORT**<br><br>(Assigned to the Hon. Diane J. Humetewa) |

Plaintiffs Jenifer Anderson and L.A. and Defendants Mesa Public School District, et. al., by and through undersigned counsel, hereby submit their Joint Case Management Report:

**1.     List of All Parties**

   **a.  Plaintiffs**

Jenifer Anderson and L.A.

   **b.  Defendants**

Mesa Public Schools District, Mesa Public Schools Governing Board, Elaine Miner, John Doe Miner, Ben Smith, John Doe Smith, Kiana Sears, John Doe Sears, Steven Peterson, Jane Doe Peterson, Jenny Richardson, John Doe Richardson, Greg Schulz, Jane Doe Schulz, Shantele Peterson, John Doe Peterson, Peter Jonovich, Jane Doe Jonovich, Holly Williams, John Doe Williams, Peter Lesar, Jane Doe Lesar, Brennan O'Connor, Jane Doe O'Connor, Cathy Underwood, John Doe Underwood, John Shea, Christine Shea, Sara Nixon, John Doe Nixon, Angelo Paffumi, Jane Doe Paffumi, Tom Brennan, and Jane Doe Brennan.

**2.    A short statement of the nature of the case (3 pages or less), including a description of each claim and each affirmative defense, and identifying the factual and legal issues genuinely in dispute.**

### a.  Plaintiffs' short statement of the nature of the case

L.A. began attending Skyline High School ("Skyline"), which is a part of the Mesa Public Schools District ("the District"), in 2013. She immediately joined the Track and Field team and earned a varsity letter. John Shea ("Shea") was a coach for the girls' Track and Field team and was involved in L.A.'s coaching and training. Shea was also a teacher and football coach. Prior to Shea being hired, Skyline's football team was a perennial loser, but became successful after his hiring. One of the District's board members, Steven Peterson ("Peterson"), was told about concerns regarding L.A. and Shea during L.A.'s sophomore year. At some point, Cathy Underwood ("Underwood") told Peterson that girls were not wearing shirts over their sports bras during track practice, which was against school policy. Underwood also told Peterson that she had approached Shea about this matter, but instead of being supported she was belittled and made fun of by Shea and the other male coaches. In violation of the District's harassment and anti-bullying policy, L.A. was not protected and the behavior was not reported.

Shea knew that he faced no repercussions based on his inappropriate behavior towards L.A. during her sophomore year and began showing increased interest in L.A. during her junior year. Shea began picking L.A. up from her house in the morning, giving her rides home from school, bringing her food at school, and attending all of her extracurricular activities. This was all part of Shea's plan to get past L.A.'s defenses and prey on her still-developing mind and body. Shea also began texting L.A. several times on a daily basis. He took her off-campus during school hours for rides in his car, regardless of the fact that Skyline has a closed-campus policy. Shea began having L.A. babysit his daughter and also took her to his son's baseball games. He encouraged and allowed L.A. to violate school policy by having her workout in a sports bra with no shirt. Shea also began touching L.A. during her workouts.

Two Skyline employees, Underwood and Nixon, became aware and were alarmed about Shea's behavior. They reported Shea's immoral behavior to Schulz, Skyline's Athletic Director and Holly Williams ("Williams"). Instead of addressing their concerns, Williams

1  fired Nixon immediately. Nixon was eventually informed that Williams did not have the
2  authority to fire her, so she was reinstated, but was asked not to come back as a track coach
3  because of her friction with Shea. Schulz did not make any attempt to investigate Underwood
4  and Nixon's concerns about Shea. Instead, Schulz decided to protect Shea, the prized football
5  coach, and ignored all complaints against him. Schulz also threatened Underwood and Nixon
6  with termination and in turn, they decided to put their careers ahead of L.A.'s well-being and
7  failed to take their concerns to someone higher up in the District.
8       Shea, emboldened by the steadfast support Schulz, increased his seduction efforts on
9  L.A., who believed Shea was helping her get into college and saw him as a father figure. Shea
10 knew L.A. lacked a father figure in her life and seized upon this fact to control her. Shea told
11 L.A. he was the only one who could get her into college with an athletic scholarship. She also
12 began telling L.A. via text message that her loved her. He also solicited photographs of L.A.
13 in her underwear and even convinced her to send him a picture of herself with an exposed
14 breast. During the summer between L.A.'s junior and senior years, Shea attempted to meet up
15 with L.A. on multiple occasions, outside of school events. Shea sent L.A. a continued barrage
16 of text messages and persuaded L.A. to be alone with him, even holding her hand during car
17 rides. During this summer, Shea vacationed to Mexico he continued to text L.A. telling her
18 that he missed her, in an attempt to keep control over her.
19     During L.A.'s senior year, prior to her eighteenth birthday, after a night of indulgence
20 in alcohol, Shea texted L.A. telling her he would not go home without seeing her because he
21 needed her. L.A. snuck out of her home and met Shea in a park, where he put his hands on her
22 and caressed her inner thigh. L.A. was nervous and scared by the escalation of physicality, but
23 felt she had to allow it to occur or her potential for an athletic scholarship would be
24 jeopardized. Shea continued to pursue L.A. at school and seemingly counting down the
25 minutes until her eighteenth birthday, he kissed her in November 2016. Peterson received a
26 text message from underwood in August or September 2016 with a picture of L.A. in a sports
27 bra and Shea with his hands on her body. Peterson also received several reports of L.A. leaving
28 with Shea in his truck after practice on multiple occasions. Peterson also claims that coaches

and staff approached her with their concerns about Shea because they were fearful of retaliation.

Instead of reporting the evidence of sexual harassment, the information was kept under wraps for months. On January 27, 2017, Peterson visited a classroom where she knew Shea and L.A. would be. Peterson said she observed Shea holding L.A. near the breast area while she was wearing only a sports bra. Peterson took a photograph of the scene and brought it and all the other information to Tom Brennan ("Brennan"), Skyline's principal. On the same day, Underwood reported seeing L.A. and Shea alone in the classroom. Several staff members at Skyline observed and knew of the inappropriate behavior displayed by Shea towards L.A., but were afraid to come forward for fear of retaliation. The head football coach, Angelo Paffumi ("Paffumi") admitted to police that he knew of complaints regarding Shea, but stated that he had no concerns about the relationship Shea had with L.A.

After forensically imaging L.A.'s cell phone, several images were not recoverable, including images sent to Shea's cell phone. Mesa Police were able to view over five-thousand (5000) messages that were deleted by L.A. to Shea. They also saw deleted facetiming and numerous phone calls. Shea sent several inappropriate text messages to L.A., for example: "I can't help it. Your [sic] just so dam [sic] Hot!! [sic]" and "Ok beautiful I gotta get to bed! I love you more than words can say!!" Mesa Police also forensically imaged Shea's phone and recovered over 2000 deleted chats, many of which were sexual in nature.

After the news broke and Shea was placed on administrative leave, L.A. was subjected to endless harassment, gossip, and bullying by fellow students and Skyline employees. Skyline put athletic pursuits of student safety, but it is also important to remember that the District put their bottom line ahead of L.A. and other students' safety and health. The District's General Counsel, Tom Pickrell ("Pickrell"), stated that the District concluded that Mr. Shea engaged in unprofessional and immoral conduct, but that the District wanted to "terminate the employment relationship by the most efficient and responsible means possible." Instead of having to continue to pay Shea during the dismissal process and employ an independent

hearing officer and a second legal counsel, the District chose to give Shea the option to simply resign rather than be terminated.

The claims Plaintiffs seek against Defendants are as follows: Count I: Violation of Plaintiffs' Civil Rights Under the Fourteenth Amendment and 42 U.S.C. § 1983 (Against the District); Count II: Violation of Plaintiffs' Civil Rights Under the Fourteenth Amendment and U.S.C. § 1983 (Against All Non-Governmental Agency Defendants); Count III: Civil Rights Violations—Title IX 20 U.S.C. § 1681 et seq.; Count IV: Intentional Infliction of Emotional Distress; Count V: Negligent Failure to Protect; Count VI: Negligence / Gross Negligence; Count VII: Negligence Per Se (Against Shea); Count VIII: Negligence Per Se; Count IX: Negligent Supervision of Students; Count X: Negligent Hiring, Supervision, and Training (Against the District, Brennan, Jonovich, Paffumi, Governing Board, and Members of the Governing Board); Count XI: Assault and Battery (Against Shea); Count XII: Aiding and Abetting Assault and Battery; Count XII: Civil Conspiracy; and Count XIV: Civil Rights Violations – 42 U.S.C. § 1985.

### b. Defendants' short statement of the nature of the case

The Shea Defendants deny any improper physical contact between Mr. Shea and L.A.

The remaining defendants (the "District Defendants") deny that they ever knew, or should have known, of any alleged inappropriate relationship or physical contact between defendant John Shea and plaintiff L.A.  The District Defendants further deny that they ever acted unreasonably toward L.A., or in their dealings with John Shea.

The Shea Defendants pled the following affirmative defenses:  failure to comply with the requirements of A.R.S. § 12-821.01; failure to timely file under A.R.S. § 12-821; A.R.S. § 12-820.04; failure to state a claim under which relief may be granted for a variety of reasons, including but not limited to: (i) the Complaint does not comply with Rule 8(a) and is thus subject to a motion for more definite statement under Rule 12(e), and (ii) the Complaint is subject to a motion to strike under Rule 12(f)(1) and 12(f)(2); standing; absolute immunity; and qualified immunity.

The District Defendants pled the following affirmative defenses: failure to comply with the requirements of A.R.S. § 12-821.01; failure to timely file under A.R.S. § 12-821; immunity against punitive damages under A.R.S. § 12-820.04; immunity pursuant to A.R.S. § 12-820.05(B); failure to state a claim under which relief may be granted for a variety of reasons, including but not limited to: (i) the Complaint does not comply with Rule 8(a) and is thus subject to a motion for more definite statement under Rule 12(e), (ii) the Complaint is subject to a motion to strike under Rule 12(f)(1) and 12(f)(2); (iii) the Complaint does not allege that a formal policy or custom of the District violated Plaintiffs' constitutional rights; lack of standing; failure to properly serve the summons and complaint; absolute immunity; and qualified immunity.

Defendants cannot identify the legal and factual issues other than those reflected below because the Complaint is conclusory and argumentative.  Defendants have attempted to state generally what they perceive will be factual issues:

(i) Whether Shea sexually abused L.A.  Plaintiffs do not allege any specifics on this issue.  In any event, the Shea Defendants deny that Shea sexually abused L.A.

(ii) Whether Shea could have aided and abetted his alleged assault and battery.  Plaintiffs allege that he did, and Defendants believe the law is contrary to Plaintiffs' position.

(iii) Whether Defendants did anything that rises to the level required by the asserted Counts.

(iv) What happened when.  The Complaint does not specify, and the Shea Defendants cannot tell, when something Shea is alleged to have done took place or what was allegedly done wrong.

(v) Whether Jenifer Anderson has standing, and which claims are asserted by her and which by L.A.

(vi) Whether it is permissible, absent an order of the Court, for L.A. to appear by her initials even though she reached the age of majority before the Complaint was filed.

(vii) What the District Defendants knew, or had reason to know, about the relationship between L.A. and Mr. Shea.

### 3. Jurisdictional Basis for the Case

This Court has Federal Question jurisdiction under 28 U.S.C. § 1331. Plaintiff has brought multiple claims against the Defendants, including civil rights violations under 42 U.S.C. 1983 and Title IX 20 U.S.C. § 1681, *et seq*.

### 4. Parties Which Have Not Been Served; Explanation of Why they Have not Been Served; Any Parties Which Have Been Served but Have Not Answered or Otherwise Appeared (including fictitious parties)

Plaintiffs contend that all parties have been served and have answered and/or appeared. (Docs. 14, 15). The Shea Defendants have been served. The District Defendants contend that they have not been properly served.

### 5. Statement of Whether Any Party Expects to Add Additional Parties or Otherwise Amend Pleadings

At this time, the parties have no plans to add additional parties to the case. However, as investigation continues, the parties may join additional parties as the evidence warrants. The parties may add claims but will not know if sufficient facts exist to add those claims until discovery is substantially complete.

In addition, all Defendants claim as affirmative defenses that the Complaint is subject to a Rule 12(f) motion to strike and a Rule 12(e) motion for a more definite statement. Many, many paragraphs in the Complaint contain scandalous material, and those paragraphs should be stricken. Plaintiffs' counsel have refused to cure these defects voluntarily. At this time, Defendants identify the following as the paragraphs of the Complaint subject to a Rule 12(f) motion to strike: 52, 53, 57, 58, 60, 64, 65, 66, 74 ("Much like Joe Paterno protecting Jerry Sandusky, Schulz directly enabled the actions of Shea"), 75, 78, 79, 86, 89, 91, 92, 94, 97, 101, 106, 108, 110, 113, 125, 127, 131, 132, 134, 142, 143, 144, 145, 148, 159, 163, 165, 174, 175, 176, 177, 188, 195, 198, 205, 207, 213, 219, 223, 228, 239, 243, 247, 250, 255, 259, 266, 273, 278, 281.

### 6. A List of Contemplated Motions and a Statement of the Issues to Be Decided by These Motions

At this stage, it is difficult to ascertain what dispositive motions will be filed. Plaintiff anticipates potentially filing a Motion for Partial Summary Judgment on liability after more

discovery has been achieved. Defendants intend to file a Rule 12(f) and a Rule 12(e) motion. Counsel for Shea requested that counsel for Plaintiffs voluntarily cure the defects in the Complaint, but counsel for Plaintiffs refused.

The District Defendants intend to file a motion to dismiss Plaintiff Jenifer Anderson's state–law claims on the grounds that she failed to timely serve a valid notice of claim pursuant to A.R.S. § 12-821.01, and failed to timely file her claims in this action. The District Defendants also intend to file a motion to dismiss Plaintiffs' claim against them for punitive damages. The District Defendants' counsel requested that Plaintiffs voluntarily dismiss their claim for punitive damages, but Plaintiffs refused. Finally, all defendants intend to file motions for summary judgment on Plaintiffs' claims following the completion of some initial discovery.

Plaintiffs note that the Shea Defendants already filed an Answer to Plaintiffs' Complaint. (Doc. 14). Plaintiff's position is that a motion under Fed. R. Civ. P. 12(e) and (f) is not proper. The Shea Defendants disagree. Under the pilot program, the Shea Defendants were required to file an answer regardless of any Rule 12 motions that they anticipated filing.

Additionally, from Plaintiffs' perspective, on May 5, 2017, District Defendants' previous counsel acknowledged receipt of Plaintiffs' Notice of Claim and stated he was authorized to accept service on behalf of the individual District Defendants. It is Plaintiffs' position that Plaintiffs' brought claims against all District Defendants under civil rights violations under 42 U.S.C. § 1983, 1985. Plaintiffs contend that is well established that punitive damages are an available remedy against all individual defendants. *Smith v. Wade*, 461 U.S. 30, 33, 103 S. Ct. 1625, 1628, 75 L. Ed. 2d 632 (1983); *Braillard v. Maricopa County*, 224 Ariz. 481, 495, ¶ 43, 232 P.3d 1263, 1277 (App. 2010). Therefore, Plaintiffs assert that any motion under Fed. R. Civ. P. 12(e) and (f) or a motion to dismiss punitive damages would be futile and directly conflict with Fed. R. Civ. P. 1.

> **7. Whether the Parties Will Consent to the Assignment of this Action to a United States Magistrate Judge in Accordance with 28 U.S.C. § 636(c)**

The parties do not all consent to the assignment of this action to a Magistrate Judge.

**8. The Status of Related Cases Pending Before Other Courts or Other Judges of this Court**

N/A

**9. A Statement of When the Parties Exchanged or Will Exchange Fed. R. Civ. P. 26(a) Initial Disclosures**

The parties understand that the MIDP Program supersedes the requirements of Rule 26(a). *See* General Order 17-08, at 1. The parties will serve their responses to the court-ordered discovery requests on May 24, 2018.

**10. Any Issues Relating to Disclosure or Discovery of Electronically Stored Information, Including the Form or Forms in Which it Will be Produced**

The parties anticipate that they will work together to properly tailor the scope of the electronically stored information ("ESI") sought by either party and will agree on the form(s) in which it will be produced. The parties anticipate that emails will be produced in native form or, otherwise, in PDF form with native form available upon request.

**11. Any Issues Relating to Claims of Privilege or Work Product**

The parties anticipate that they will be able to work through any issues that may arise without the involvement of the Court. The parties will inform the Court if they cannot come to an agreement.

The parties will work together to determine the need and propriety of a Stipulated Protective Order in this case. Should the parties agree that a Stipulated Protective Order is necessary to protect a party or person from disclosure of proprietary and confidential information, or from undue burden or expense, they will submit a proposed Stipulated Protective Order for the Court's good cause review.

**12. A Discussion of the Parties' Compliance to Date with the MIDP; Whether Any Issues Have Arisen Under the MIDP; If Issues Have Arisen, A Description of Those Issues**

The parties agree to comply with the MIDP.

**13. Necessary Discovery**

    **a. The extent, nature, and location of discovery anticipated by the parties**

Plaintiffs' counsel plans to conduct discovery under Fed R. Civ. P. 30-34, and 36. Plaintiffs expect initial discovery of ESI, including but limited to record conversations, emails, written correspondence, Defendant School District's policies and procedures, Defendants' employment records, and documentation of any investigation the Defendant School District conducted regarding the facts alleged in the Complaint. Plaintiffs' counsel plans to conducts additional discovery of non-parties under Fed R. Civ. P. 45.

Defendants' counsel anticipate an initial wave of written discovery to the parties, including requests for ESI relating, by way of examples only, to social media, text, emails, and direct messages on social media platforms. That first wave will be followed by a second wave of written discovery on non-parties, depending on what is discovered in the first wave. Defendants' counsel then anticipate depositions of the Plaintiffs and third parties.

    **b. The scope of discovery and whether discovery should be conducted in phases or should be limited to focus on particular issues**

The parties do not see a need for phased discovery or discovery limited in focus on particular issues.

    **c. Suggested changes, if any, to the discovery limitations imposed by the Fed. R. Civ. P.**

The parties do not believe changes to the discovery limitations imposed by the Rules will be necessary.

    **d. The number of hours permitted for each deposition, unless modified by agreement of the parties**

The parties believe that the 7 hours provided in the rule will be adequate. If the circumstances require that more time be allotted, counsel will first seek to stipulate with all counsel on an extended amount of time. Only if such agreement cannot be reached will counsel seek the assistance of the Court.

**14. When the Parties Served Their MIDP Responses**

May 24, 2018

**15.    Proposed Specific Dates**

    **a.   Deadline for completion of fact discovery:**

February 1, 2019

    **b.   Dates for complete expert disclosures under Fed. R. Civ. P. 26(a)(2)(A)-(E):**

The parties propose January 11, 2019 for Plaintiffs' expert disclosures; March 8, 2019 for Defendants' expert disclosures; and April 12, 2019 for Plaintiffs' rebuttal expert disclosures.

    **c.   Deadline for completion of all expert depositions:**

June 28, 2019

    **d.   Deadline for filing dispositive motions:**

August 2, 2019

    **e.   Date by which the parties shall have engaged in face-to-face good faith settlement talks:**

February 1, 2019

**16.    Whether A Jury Trial Has Been Requested and Whether the Request for A Jury Trial Is Contested. If the Request for A Jury Trial Is Contested, The Reasons Why**

A jury trial has been requested.

**17.    The Estimated Length of Trial**

Two weeks.

**18.    The Prospects for Settlement, Including Any Request to Have A Settlement Conference Before Another United States District Judge or A Magistrate Judge, Or Any Other Request of The Court for Assistance In Settlement Efforts**

The parties are open-minded with respect to settlement discussions. Also, the parties have determined that they may seek mediation before a private mediator at an appropriate time.

**RESPECTFULLY SUBMITTED** this 23rd day of May 2018

11

**MILLS + WOODS LAW, PLLC**


By    /s/    Sean A. Woods
    Sean A. Woods
    Robert T. Mills
    Jordan C. Wolff
    5055 N 12th Street, Suite 101
    Phoenix, AZ 85014
    *Attorneys for Plaintiffs*

**HENDRICKS MURPHY, PLLC**


By    /s/ Ed Hendricks, Jr. (*with permission*)
    Ed Hendricks, Jr.
    David W. Cowles
    3101 North Central Avenue, Suite 970
    Phoenix, Arizona 85012
    *Attorneys for Defendants John Shea and Christine Shea*

**WRIGHT WELKER & PAUOLE PLC**


By    /s/ Christopher S. Welker *(with permission)*
    Matthew W. Wright
    Christopher S. Welker
    10429 South 51st Street, Suite 285
    Phoenix, Arizona 85044
    *Attorneys for all Defendants, except John Shea and Christine Shea*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Matthew W. Wright
mwright@wwpfirm.com
Christopher S. Welker
cwelker@wwpfirm.com
**WRIGHT WELKER & PAUOLE PLC**
10429 South 51st Street, Suite 285
Phoenix, Arizona 85044
(480) 961-0040
*Attorneys for all Defendants, except John Shea and Christine Shea*

Ed Hendricks, Jr.
ed@hendricksmurphy.com
David W. Cowles
david@hendricksmurphy.com
**HENDRICKS MURPHY, PLLC**
3101 North Central Avenue, Suite 970
Phoenix, Arizona 85012
(602) 604-2190
*Attorneys for Defendants*
*John Shea and Christine Shea*

*/s/ Jordan C. Wolff*